UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERTO SORIA-ZAVALA,

     Petitioner,

v.                                       Case No. 8:18-cv-327-T-36AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS.

     Respondent.

_____/

**O R D E R**

Roberto Soria-Zavala petitions for the writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court conviction for lewd and lascivious molestation of a minor. (Doc. 1)  Respondent argues that Ground Two and Ground Four are unexhausted and procedurally barred from federal review. (Doc. 13 at 22–26, 34–44) Upon review of the petition and the response and exhibits (Docs. 13 and 14), the petition will be denied.

**PROCEDURAL HISTORY**

A jury convicted Soria-Zavala of lewd and lascivious molestation of a minor. At trial, A.A. testified that Soria-Zavala touched her vagina when she was 10 years old.  Soria-Zavala was A.A.'s cousin and lived with her.  A.A. and her sister were playing tag with Soria-Zavala.  When A.A. bent over to pick up a bottle cap that she dropped, Soria-Zavala snuck up behind her and touched her vagina.  A.A.'s sister saw

Soria-Zavala put his hand in A.A.'s pants.  Soria-Zavala moved out of the home shortly after.  A.A. told her father about the touching a year later.

Police interrogated Soria-Zavala at his home.  At first, Soria-Zavala denied that he touched A.A.  He then said that A.A. had exposed herself to him and he may have accidentally touched her.  He was sitting on some stairs, A.A. came up to him from behind and exposed herself, and he pushed her away and may have accidentally touched her vagina.  He believed that A.A. and her father made up the accusation so that A.A.'s father could evict him from the home.

Soria-Zavala agreed to take a polygraph examination.  After signing a polygraph examination consent form and a *Miranda* rights waiver form, Soria-Zavala admitted to touching A.A.  He told the detective that he was playing outside with A.A., A.A. was leaning against a car, and he stuck his hand in her pants and touched her vagina underneath her underwear for ten seconds.  He denied touching A.A. when she was picking up something from the ground and denied touching her any other time.  The jury viewed a video recording of the interrogation.  Soria-Zavala also wrote a confession which stated:  "[A.A.] was around the car, and I stuck my hands in the pants and I touched the vagina."  The detective arrested him without administering the polygraph examination.

The jury found Soria-Zavala guilty as charged.  The trial court sentenced him to life in prison with a 25-year mandatory minimum term (Doc. 14-2 at 103) but resentenced him to the 25-year term only after granting his motion to mitigate his sentence. (Doc. 14-2 at 108, 114)  Soria-Zavala appealed and the state appellate court

affirmed in an unexplained decision. (Doc. 14-3 at 70)  The post-conviction court denied relief after an evidentiary hearing (Doc. 14-4 at 178–82) and the state appellate court affirmed in an unexplained decision. (Doc. 14-4 at 257)  Soria-Zavala's timely federal petition followed.

## GOVERNING LEGAL PRINCIPLES

**AEDPA**

Because Soria-Zavala filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims. *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

> materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Clearly established federal law refers to the holding of a U.S. Supreme Court's opinion at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Williams*, 529 U.S. at 412 (italics in original). Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "This is 'meant to be' a difficult standard to meet." *LeBlanc*, 137 S. Ct. at 1728 (quoting *Richter*, 562 U.S. at 102).

A factual determination by the state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A federal habeas court may grant relief only if "in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016). A state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (applying *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* at 1192.

**Ineffective Assistance of Counsel**

Soria-Zavala asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag.*

*Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on federal habeas.  28 U.S.C. § 2254(b)(1)(A).  The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).  The state court must have the first opportunity to review and correct any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim.  *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982).  If the state court would deny the claim on state procedural grounds, the federal court instead denies the claim as procedurally barred.  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  A petitioner may excuse a procedural default on federal habeas by (1) showing cause for the default and actual prejudice from the alleged violation of federal law or (2) demonstrating a miscarriage of justice.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

In Ground Four, Soria-Zavala cites *Martinez v. Ryan*, 566 U.S. 1 (2012) and asserts that the absence of appointed counsel in state post-conviction proceedings excuses the procedural default.  (Doc. 1 at 12–15)  When a state court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding, a petitioner can establish (1) cause by showing either that the state court did not appoint him counsel or that appointed counsel was ineffective for not raising a claim, and (2) prejudice by showing that the claim is a substantial one, or has "some merit." *Martinez*, 566 U.S. at 14.

A Florida court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding.  *Robards v. State*, 112 So. 3d 1256, 1266–67 (Fla. 2013). The state court appointed Soria-Zavala post-conviction counsel after the time to file a new post-conviction claim expired.  (Doc. 14-3 at 72, 232–34)  Fla. R. Crim. P. 3.850(e) ("New claims for relief contained in an amendment need not be considered by the court unless the amendment is filed within the time frame specified in subdivision (b).").  Consequently, Soria-Zavala must demonstrate the claim has "some merit" to excuse a procedural default.  *Martinez*, 566 U.S. at 14.

## ANALYSIS

### Ground One

Soria-Zavala asserts that the trial court violated his right to counsel and his right against self-incrimination by denying his motion to suppress statements that he made to police.  (Doc. 1 at 3)  He contends that police officers took him into custody to administer a polygraph examination, failed to adequately advise him of his

constitutional rights, and coerced the waiver of his rights.  (Doc. 1 at 3–7)  At a hearing,

the trial court orally denied the motion as follows (Doc. 14-2 at 164–67):

> After listening to the testimony, I don't believe that the defendant was in custody. He clearly was told he didn't have to make a statement if he didn't want to. He didn't have to take the polygraph if he didn't want to, which implies and, of course, you know there's only been one witness. So the testimony is uncontroverted, but it implies that if the defendant had said, I'm not going to take your test, I don't want to talk to you, it's over, and he leaves. He clearly was not under arrest prior to the giving of the polygraph or any statements to Detective Fernandez.
>
> Nevertheless, *Miranda* was given to the defendant. And I agree that Detective Fernandez did not advise the defendant that any statements that he made could be used against him later in a court of law. I don't think that in and of itself is fatal.
>
> The Detective asked the defendant his education. Asked the defendant if he was under the influence of any alcohol. All of the statements that the defendant made in response to the detective's questioning appeared to be appropriate.
>
> At no time is it indicated that the defendant has questions about what is going on, he doesn't understand or he's confused. I don't see any of that. I don't know if there's any evidence of that. It doesn't bear that out in the transcript of what I've seen so far in the transcript, and I don't think that Detective Fernandez indicated that he had difficulty with the defendant understanding what was taking place. Although Detective Fernandez allowed the defendant to read and sign the *Miranda* form, he did not explain line-by-line what the *Miranda* form means, and I don't know that there is case law that says a detective has to explain line-by-line the *Miranda* warnings.
>
> He did go through and tell him you understand that you have the right to an attorney. You don't have to answer these questions.
>
> He asked the defendant if he understood his *Miranda* warnings, what he read. The defendant acknowledged that he did. So even though Detective Fernandez did not say, "Are you aware that these statements that you make can be used against you," I don't think that in and of itself is defective.

> Now, if you are to show me a literal translation of the *Miranda* rights that the defendant read and signed and acknowledged that he understood and that document is defective, then I believe that I would have a different opinion of the case, but I believe that *Miranda* was proper.
>
> The third point that you make is that Detective Fernandez may have made a comment to the defendant that — I don't know that it's a comment that is untrue, but by the mere fact of the detective saying, well, it's a good thing that they're not alleging there's force. That is an investigative interrogation technique, if you will. Case law is clear during interrogations of defendants, law enforcement officers tell them things all of the time that are not true and have defendants respond, and that doesn't make an interview of a defendant suppressible. It is an interview technique that is used by law enforcement regularly.
>
> So based upon all of those factors, I'm going to find that the confession was freely and voluntarily entered, and I'm going to deny the motion to suppress.

At the hearing, the detective testified that he reviewed a polygraph consent form with Soria-Zavala and translated the form from English to Spanish. (Doc. 14-2 at 131–32) The detective advised Soria-Zavala that he did not have to take the test and instructed Soria-Zavala to sign the form only if he wanted to take the test. (*Id.* at 132) The form stated: "I, Roberto Soria-Zavala, do hereby freely and voluntarily submit to a polygraph examination . . . ." (Doc. 14-2 at 37) The detective filled out the form with Soria-Zavala and reviewed the answers with him for accuracy. (Doc. 14-2 at 132–33) Soria-Zavala then signed the form. (*Id.* at 37)

The detective further testified that he reviewed a *Miranda* form with Soria-Zavala. (Doc. 14-2 at 134) The form was entirely written in Spanish. (Doc. 14-2 at 39) Soria-Zavala said that he had finished high school. (*Id.* at 140) The detective asked Soria-Zavala to read the form, provided him ample time, and observed him

10

reading.  (Doc. 14-2 at 134–35)   The detective advised Soria-Zavala to ask any questions if he did not understand the form and instructed him to sign the form if he agreed to continue with the polygraph test.  (*Id.* at 134)  After Soria-Zavala signed the form, the detective told Soria-Zavala that he did not have to answer any questions and had a right to an attorney.  (Doc. 14-2 at 135, 147)  Soria-Zavala confirmed that he understood his rights.  (*Id.* at 135)

The detective never verbally told Soria-Zavala that his statements could be used against him in court, but the *Miranda* form warned him.  (Doc. 14-2 at 147–48)  Also, the detective never verbally told Soria-Zavala that he could leave but instead told him that he did not have to take the test.  (Doc. 14-2 at 152)

*Miranda v. Arizona*, 384 U.S. 436 (1966) holds that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  *Miranda*, 384 U.S. at 444.  Before any questioning, the defendant must be informed that he has the right to remain silent, his statement can be used as evidence against him, and he has the right to have a retained or appointed attorney present.  *Miranda*, 384 U.S. at 444–45.  "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda*, 384 U.S. at 444.  If the defendant indicates that either he wants to consult an attorney or that he does not want to participate in an interrogation, police may not question him.  *Miranda*, 384 U.S. at 444–45.

Because the detective presented Soria-Zavala with a form written in Spanish listing all his *Miranda* rights, gave him time to read those rights, and asked him to sign the form to memorialize his waiver of those rights, the state court did not unreasonably apply *Miranda*. *Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004) ("[G]iving the warnings and getting a waiver has generally produced a virtual ticket of admissibility . . . ."); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.").

Even though the detective did not read the *Miranda* rights to Soria-Zavala, the detective asked Soria-Zavala to read the rights himself, observed him read the rights, and confirmed that he understood the rights. (Doc. 14-2 at 134–35) Soria-Zavala does not cite clearly established federal law as determined by the U.S. Supreme Court that requires a police officer to verbally advise a defendant of his rights as well. *Florida v. Powell*, 559 U.S. 50, 60 (2010) ("In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by *Miranda*.") (citation and quotations omitted and alterations in original). *Accord United States v. Boon San Chong*, 829 F.2d 1572, 1574 (11th Cir. 1987) (". . . Chong was advised of his rights in both his native language and English and claimed to understand those rights. His election to answer questions

shortly after reading the Chinese Advice of Rights form indicates that he was knowingly waiving his rights, despite the language problems."); *United States v. Alexander*, 441 F.2d 403, 404 (3d Cir. 1971) ("'There is no requirement as to the precise manner in which police communicate the required (*Miranda*) warnings to one suspected of crime. . . .'") (quoting *Bell v. United States*, 382 F.2d 985, 987 (9th Cir. 1967)).

Finally, Soria-Zavala contended that the detective coerced him by saying, "The good thing about what they have reported is that you did not use any force, you didn't try to take off the clothes . . . none of that, they only told me that when you were there with them one day you took the opportunity given to you and touched her." (Doc. 14-2 at 34)  Soria-Zavala asserted that the detective misled him about the seriousness of the accusations to coerce his confession.  (*Id.*)

The detective made this comment after Soria-Zavala waived his rights (Doc. 14-2 at 148–49) and accurately told him that the victim did not accuse him of either using force or trying to take off her clothes.  (Doc. 14-2 at 148–50)  Because the detective's comment was neither a coercive threat nor went directly to the nature of Soria-Zavala's rights and the consequences of waiving them, the comment did not render his confession involuntary.  *Dickerson v. United States*, 530 U.S. 428, 444 (2000) ("'[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.'") (citation omitted); *Moran v. Burbine*, 475 U.S. 412, 423–24 (1986) ("Granting that the 'deliberate or reckless'

13

withholding of information is objectionable as a matter of ethics, such conduct is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them."). *Accord United States v. Farley*, 607 F.3d 1294, 1328 (11th Cir. 2010) ("Generally, courts have held statements involuntary because of police trickery only when other aggravating circumstances were also present. Misleading a suspect about the existence or strength of evidence against him does not by itself make a statement involuntary.") (citation omitted).

The detective complied with the federal constitution and, consequently, the state court did not unreasonably apply *Miranda*. *Land v. Allen*, 573 F.3d 1211, 1217 (11th Cir. 2009) (requiring a federal habeas court to "independently ascertain and apply Federal law to determine whether the challenged statement was obtained in accordance with the Constitution"). Ground One is denied.

**Ground Two**

Soria-Zavala asserts that the trial court violated his right to due process and a fair trial by providing the jury during deliberations an unredacted recording with evidence of uncharged crimes of sexual abuse. (Doc. 1 at 8–10) The respondent contends that the ground is unexhausted and procedurally barred. (Doc. 13 at 23–26)

Soria-Zavala raised the issue in his brief on direct appeal (Doc. 14-3 at 33–38) but neither labeled the issue "federal," nor cited the federal constitution or a case deciding a similar claim on federal law. *Reese*, 541 U.S. at 32. Because Soria-Zavala did not fairly present the federal nature of his claim to the state court, the ground is

14

unexhausted.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

If Soria-Zavala returned to state court to exhaust the claim, the state court would dismiss the claim as procedurally barred.  Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").  Soria-Zavala does not argue that either cause and prejudice or manifest injustice excuses the procedural default.  (Doc. 1 at 8–10)  *Martinez* applies only to an ineffective assistance of counsel claim and, therefore, cannot excuse the default.  *Chavez v. Sec'y, Fla. Dep't Corrs.*, 742 F.3d 940, 945 (11th Cir. 2014).  Consequently, the claim is procedurally barred from federal review.  *Snowden*, 135 F.3d at 736.

Also, while the federal petition briefly asserts that the state court violated Soria-Zavala's due process and fair trial rights (Doc. 1 at 8, 10), the ground is otherwise based entirely on the violation of state law.  (Doc. 1 at 8–10).  Soria-Zavala cites only state authorities in support of the ground (Doc. 1 at 8–10), and the state law claim is not cognizable on federal habeas.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("This limitation on federal habeas review is of equal force when a petition,

which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (citation omitted).  Ground Two is denied.

**Ground Three**

Soria-Zavala asserts that trial counsel was ineffective for advising him not to testify.  (Doc. 1 at 10–11)  He contends that he told trial counsel that he wanted to testify, and trial counsel advised him not to testify because the prosecution would cross-examine him about uncharged crimes of sexual abuse.  (Doc. 1 at 10)  After an evidentiary hearing, the post-conviction court denied the claim as follows (Doc. 14-4 at 178–80):

> . . . Defendant alleges that counsel was ineffective for providing inadequate and flawed advice to Defendant regarding whether or not he should testify. Defendant claims that when he originally informed counsel he wanted to testify she advised against doing so because if Defendant testified, the State would be able to delve into Defendant's alleged inappropriate touching of the victim's sister. Defendant alleges that based on this information he chose not to testify at trial.
>
> At the hearing on this motion, Defendant testified that the only reason he agreed not to testify at trial was because counsel had advised him that if he did[,] testimony regarding allegations that he also inappropriately touched the victim's sister would be introduced. Defendant stated that he would have testified that he unintentionally touched the victim during a game of tag. However, Defendant testified at the hearing that he did not tell counsel that was what happened. He further testified that he did not tell Detective Fernandez during their interview that the touching was unintentional. Defendant stated that he remembered telling Detective Fernandez that he placed his hand inside [ ] the victim's pants in order to touch her vagina.
>
> Trial counsel [ ] testified that prior to trial she filed a motion *in limine* seeking a ruling that there be no mention of the victim's sister's allegation that Defendant had inappropriately touched her. She testified that the motion *in limine* was granted. [Trial counsel] further testified that although she did not have a specific

recollection of their discussion regarding whether or not to testify, she would not have advised Defendant that testimony regarding the uncharged touching would come in if he chose to testify. She testified that if anything she may have discussed with Defendant how he could open the door to such testimony, depending on what he said on the stand.

[Trial counsel] also testified that her advice in a situation where an admission is being introduced at trial would be to be aware that the admission could be used to impeach Defendant if he should change his story. She testified that a video recording was played at trial where Defendant admitted to putting his hands inside the victim's pants. She also testified that prior to trial Defendant told her that he touched the victim in her vaginal area. The Court finds [trial counsel's] testimony credible. After considering Defendant's allegations, the testimony and evidence presented at the hearing, and the record, the Court finds Defendant has failed to demonstrate that counsel misadvised him regarding his right to testify. As such, [the ground] is denied.

The state court found trial counsel credible at the post-conviction evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) ("'Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.'") (citation omitted).

At the hearing, trial counsel testified as follows (Doc. 14-4 at 162–68):

[Prosecutor:]        . . . When you were preparing for trial, did you become aware through the police report or through discovery that there was an allegation made by another juvenile [ ]?

[Trial counsel:]     Yes, [the victim's] sister.

[Prosecutor:]        Okay. And what steps did you take to make sure that did not come up at trial?

[Trial counsel:]     I filed a motion *in limine* asking the court to rule that no mention of the uncharged

|                     | victim [ ] be brought into the trial, and that motion was granted. |
|---------------------|---|

. . .

| [Prosecutor:]     | Was it your intent going into that trial to maintain keeping that information out throughout the entire trial? |
|-------------------|---|
| [Trial counsel:]  | Yes. |
| [Prosecutor:]     | And what was the gist of Detective Fernandez's testimony? |
| [Trial counsel:]  | He conducted a polygraph examination on Mr. Soria that was audio and video recorded, and that was actually played for the jury where Mr. Soria admitted to touching [the victim] specifically sticking his hands inside of her pants and that was played for the jury. |

. . .

| [Prosecutor:]     | Was your intent in meeting with Mr. Soria to go over what he had told [his former trial counsel]? |
|-------------------|---|
| [Trial counsel:]  | Yes. |
| [Prosecutor:]     | And that was a face-to-face meeting between you and Mr. Soria prior to trial, correct? |
| [Trial counsel:]  | Yes. |
| [Prosecutor:]     | Okay. Was part of that information that you wanted to review with him the fact that he had admitted to [his former trial counsel] touching the victim on her vagina? |
| [PCR counsel:]    | Objection, assumes facts not in evidence and hearsay. |
| [Court:]          | Overruled. |

[Trial counsel:]       Yes, I wanted to confirm what he told [his former trial counsel], but independent of that my notes reflect that Mr. Soria told me that he touched [the victim] once and it was in her vagina area outside of her clothing is what he told me.

[Prosecutor:]         Okay. What significance did that have going into the trial as far as your defense strategy?

[Trial counsel:]       Well, I filed a motion to suppress the polygraph interview. That was denied. So we were left with the statement of his admission. So him and I discussed and my notes reflect our theory of defense would be that this was an accidental touching and not an intentional touching because we were going to have to deal with his admission to Detective Fernandez.

. . .

[Prosecutor:]         At some point in the trial it came time that Mr. Soria was going to be asked whether he wanted to testify. Do you recall that in the trial?

[Trial counsel:]       Yes.

[Prosecutor:]         Do you recall having conversations with Mr. Soria about whether or not he wished to testify?

[Trial counsel:]       Yes. In Judge Tharpe's courtroom, he requires a form to be filled out, that I sign [ ] and Mr. Soria signs [ ] after we converse about his right to testify, and so that is done in all Judge Tharpe's trials. That was done in this case.

[Prosecutor:]         Do you have any recollection if Mr. Soria ever told you that he, in fact, wanted to testify?

| | |
|---|---|
| [Trial counsel:] | I do not. |
| [Prosecutor:] | Would the — him signing the form, would that indicate that that was his wish? |
| [Trial counsel:] | Yes. |
| [Prosecutor:] | Do you recall any specific conversations with him about his right to testify? |
| [Trial counsel:] | I don't have a specific recollection of the actual discussion, but my advice in a situation where we have a statement being introduced where there's an admission would be, be aware that that admission should you change your story could be used to impeach you if you should change what you told the police.<br><br>And so that would have been the advice that I would have given in discussing whether — you know, his right to testify. |
| [Prosecutor:] | And also would part of that advice be going over the motion *in limine*, the fact that you had kept some evidence out? |
| [Trial counsel:] | Correct. I would not have advised him that should he testify that the uncharged touching would come in, but I may have had a discussion with him that depending on what he said could have opened the door. For example, something like I've never touched anyone ever before in my life potentially could open the door to the uncharged touching, but I would not have said just because you testify, that's coming in. That would not have been my advice. |
| [Prosecutor:] | And do you specifically recall giving that advice that Mr. Soria said that you did? |
| [Trial counsel:] | No, I do not have a specific recollection of discussing the uncharged victim at all with regards to testifying. |

Trial counsel denied advising Soria-Zavala that the uncharged conduct would be introduced if he testified, and the state court determined that her testimony was credible. *Nejad*, 830 F.3d at 1292. Trial counsel would have advised Soria-Zavala that he could open the door to the admission of the uncharged conduct if he testified. This advice was sound. The prosecutor could have impeached Soria-Zavala's credibility like any other witness. *Butler v. State*, 842 So. 2d 817, 827 (Fla. 2003). "[I]mpeachment may be through questioning concerning prior acts of misconduct in a situation where the defendant has testified on direct examination that he has not or would not participate in such misconduct." *Butler*, 842 So. 2d at 827. *Accord Calloway v. State*, 210 So. 3d 1160, 1186 (Fla. 2017) ("Calloway opened the door to cross-examination about his participation in the Twin robbery. He stated several times on direct examination that he would not know how to commit a robbery and he was not the sort of individual who would engage in violent criminal activity such as robbery or homicides.").

Also, Soria-Zavala contended that he would have testified that he accidentally touched the victim during the game of tag. (Doc. 14-4 at 141) However, he initially told police that he did not touch the victim. (Doc. 14-4 at 555) He then told police that he may have accidentally touched the victim while sitting on the stairs. (*Id.* at 556–57) At the police station, he admitted to touching the victim while they were playing outside. (*Id.* at 656–63) When the detective asked Soria-Zavala why he touched the victim, he responded, "The truth is, I don't know. I don't know really." (Doc. 14-2 at 660)

In his confession, Soria-Zavala did not claim that the touching during the game of tag was an accident.  If he had testified that the touching was an accident, the prosecutor would have impeached him with this material omission and his other prior inconsistent statements.  Fla. Stat. § 90.608(1).  *Accord Hawn v. State*, 300 So. 3d 238, 242 (Fla. 4th DCA 2020) ("'[A]n omission in a previous out-of-court statement about which the witness testifies at trial' can be considered an inconsistent statement for impeachment purposes, if the omission is a 'material, significant fact rather than mere details and would naturally have been mentioned.'").

Because trial counsel's advice was correct and the outcome would not have changed, the state court did not unreasonably apply *Strickland*.  *Preston v. Sec'y, Dep't Corrs.*, 745 F. App'x 835, 838 (11th Cir. 2018); *Jones v. Sec'y, Dep't Corrs.*, 487 F. App'x 563, 567 (11th Cir. 2012).  Ground Three is denied.

**Ground Four**

Soria-Zavala asserts that trial counsel was ineffective for advising him that the maximum sentence that he faced if convicted was 15 years.  (Doc. 1 at 12–13)  He contends that he relied on trial counsel's advice to reject the prosecution's 10-year offer and later discovered that the maximum sentence was 30 years.  (Doc. 1 at 13)  After the jury convicted Soria-Zavala, the trial court sentenced him to 25 years.  (Doc. 1 at 15)  The respondent correctly argues that the ground is unexhausted and procedurally barred.  (Doc. 13 at 34–36)  Soria-Zavala raised the claim in neither his post-conviction motion (Doc. 14-3 at 79–93) nor his brief on appeal.  (Doc. 14-4 at 209–24)  Soria-

Zavala concedes that he did not exhaust the claim but argues that *Martinez* excuses the procedural default. (Doc. 1 at 12–15)

A defendant is entitled to the effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To demonstrate prejudice, the defendant must show that "but for the ineffective advice of counsel there is a reasonable probability (1) that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), (2) that the court would have accepted its terms, and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012).

*Martinez* does not excuse the procedural default. The prosecutor charged Soria-Zavala with lewd and lascivious molestation of a minor in violation of section 800.04(5)(a), (b), Florida Statutes. (Doc. 14-2 at 46) The crime was a life felony and punishable by either life in prison or a prison term of at least 25 years to life followed by probation for life. Fla. Stat. § 775.082(3)(a)(4) (2009).

Soria-Zavala knew that the maximum sentence was not 15 years because at the suppression hearing he heard, through the assistance of an interpreter, trial counsel explain to the trial judge (Doc. 14-2 at 163–64) (bolding added):

> [Trial counsel:]      Detective Fernandez, he even used the term a simple touching versus using force or taking off clothes. Well, we all know that for purposes of a lewd and lascivious molestation, that doesn't matter. Whether

he used force or took off their clothes does not make it any less serious. In fact, **he's charged with a life felony based on a 25-year minimum mandatory on this case**, and with that statement, Detective Fernandez is misleading him into believing that because it was a simple touching, he's not going to be charged with anything serious.

. . .

So it's our position that it was a direct result of that statement and implying that these allegations were not as serious. Well, we know under our law it's irrelevant whether he used force or took off their clothes because **that touching that he admitted to resulted in a life felony with a 25-year minimum mandatory**.

Shortly after, at the same hearing, the following ensued between the parties and the trial judge (Doc. 14-2 at 167):

| | |
|---|---|
| [Prosecutor:] | I don't know if — I want to make sure on the record there is an offer outstanding, ten years Florida state prison followed by ten years sex offender probation. I want to know at this point if that is accepted or rejected before moving on. |
| [Trial counsel:] | Yes, sir. |
| [The Court:] | Yes, sir, what? |
| [Trial counsel:] | He's rejecting the offer. |
| [The Court:] | Okay. Thank you. |
| [Prosecutor:] | Thank you. |

Also, Soria-Zavala does not allege either details of the communications between

him and trial counsel about the plea or specific facts which show that he would have

accepted the plea instead of going to trial.  In his petition, he instead generally alleges

(Doc. 1 at 13) (footnote omitted):

> Prior to trial, an off-the-record plea was offered to the petitioner
> from trial counsel. The offer was for 10 years minimum
> mandatory. Petitioner's counsel relayed this plea to the
> petitioner at the county jail and advised petitioner that he faced
> a maximum sentence of 15 years if he proceeded to trial[.]
> [U]ltimately, petitioner chose to go to trial and he was convicted
> of lewd or lascivious molestation and sentenced to 25 years in
> state prison.
>
> Petitioner affirmatively asserts had his counsel properly advised
> him of the statutory maximum faced upon conviction, he would
> have never turn[ed] down the favorable plea offer, but rather,
> would have entered into the plea and be sentenced to a term of
> 10 years incarceration with approximately 10 months [of] jail
> time credit. . . . [C]ounsel failed to advise petitioner of the
> maximum penalties faced, but most significantly, misadvised
> him that the statutory maximum was 15 years instead of 30
> years, before he turned down a favorable plea.

Finally, Soria-Zavala rejected the 10-year offer, even though he confessed to the

detective that he had touched A.A.'s vagina while she was leaning on a car.  Soria-

Zavala memorialized that confession in a signed, handwritten note.  Police recorded

a video of the confession as well.  Despite that overwhelming, uncontroverted evidence

of his guilt, he rejected the extremely favorable offer and went to trial.

Because the record refutes the claim and Soria-Zavala does not allege specific

facts in support of the claim, he does not show that the claim has "some merit" under

*Martinez*.  *Martinez*, 566 U.S. at 14.  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1264–65

(11th Cir. 2014) (concluding that a petitioner did not show cause under *Martinez*

because he failed to state a claim under the rules governing federal habeas cases); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."); *Osley v. United States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014) ("While Osley's denial of guilt surely is not dispositive on the question of whether he would have accepted the government's plea offer, it is nonetheless a relevant consideration."). Consequently, Ground Four is procedurally barred from federal review. *Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("[A]ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

It is therefore **ORDERED**:

1. The petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Soria-Zavala and close this case.

3. Soria-Zavala neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Consequently, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.

**DONE AND ORDERED** in Tampa, Florida this 1st day of March, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties, if any